UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATHANIAL D. PONN, ) <br> ) <br> Defendant, ) <br> ) | Case No. |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("the Commission") alleges the following against defendant Nathanial D. Ponn (hereinafter "Ponn" or "defendant"):

### PRELIMINARY STATEMENT

1. This case involves a fraudulent scheme to fund the trading of securities by inducing broker firms to credit brokerage accounts based upon purported, but bogus, bank transfers and thereafter using the fraudulently obtained funds to purchase securities. During the period 2007 through April 2015, Ponn opened several hundred brokerage accounts at various broker-dealers. Upon opening these accounts, Ponn purported to fund them with bank transfers, mostly Automated Clearing House ("ACH") transfers, from bank accounts that Ponn knew, and the broker firms soon discovered, were substantially underfunded or fictitious. Before the broker firms discovered the fraud, however, many of them credited Ponn's brokerage accounts, allowing him to purchase securities and attempt to withdraw money. Once the broker firms discovered the bogus nature of the bank transfers, they locked Ponn's accounts, sold off the accounts' holdings, and ultimately closed the fraudulently opened accounts.

2. Over the course of the scheme, Ponn opened approximately 600 brokerage accounts and purported to fund them with bogus bank transfers totaling approximately $8.7 million. Of this amount, broker firms credited Ponn's accounts in the approximate amount of $6.3 million, which Ponn then used to purchase approximately $2.9 million's worth of securities. He also attempted to withdraw at least $271,000 from these accounts. Although the internal control procedures of most firms prevented Ponn from making cash withdrawals before the bank transfers were confirmed, he was able to withdraw $300 during the scheme. Moreover, Ponn's fraudulent securities purchases of approximately $2.9 million caused the broker firms to suffer net trading losses of approximately $26,000, and put them at risk for much more.

3. By engaging in this scheme to defraud and as alleged further herein, defendant Ponn has engaged in fraudulent or deceptive conduct in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

4. Based upon the defendant's violations, the Commission seeks: (a) a permanent injunction (*i*) prohibiting the defendant from further violations of Section 10(b) of the Exchange Act and (*ii*) enjoining defendant from opening an account with any brokerage firm without first providing the broker a copy of the complaint filed in this case as well as a copy of the final judgment entered; (b) disgorgement of the defendant's ill-gotten gains, plus prejudgment interest; and (c) imposition of a civil penalty due to the repeated and egregious nature of the defendant's violations.

## JURISDICTION

5. The Commission seeks a permanent injunction and disgorgement pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. §78u(d)(1)]. The Commission seeks the

imposition of civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

6. This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d)(1), 78u(e), 78aa]. Venue is proper in this District because Ponn is a resident of Massachusetts.

7. In connection with the conduct described in this Complaint, defendant directly or indirectly has made use of the mails or the means or instruments of transportation or communication in interstate commerce.

8. Defendant's conduct has involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and has resulted in substantial loss, or significant risk of substantial loss, to other persons.

## DEFENDANT

9. **Nathanial D. Ponn**, age 27, is a resident of Boston, Massachusetts. Ponn has never worked in the securities business or been registered with the Commission in any capacity.

## STATEMENT OF FACTS

10. Beginning in early 2007 and continuing through at least April 2015, Ponn engaged in a scheme to defraud broker firms in order to trade securities risk-free by fraudulently inducing firms to credit him money and then using that fraudulently obtained money to purchase securities.

11. Ponn fraudulently induced broker firms to credit him money by opening accounts with purported money transfers from bank accounts that were either underfunded or completely fake.

3

12. Broker firms generally credit their customers' brokerage accounts once the customer authorizes the firm to debit their bank account, but before the firm has verified the existence of the bank account and the sufficiency of funds held in the account.

13. The verification process generally takes 2 to 3 days.

14. During the 2 to 3 days of the verification process, the typical brokerage account holder has the ability to buy and sell securities within the account.

15. Ponn's scheme exploited this two to three day delay in the verification process. He knowingly gave the broker firms purported bank account fund transfers from fake or underfunded bank accounts in order to obtain credited funds from the broker firms. Ponn then used the fraudulently obtained funds to purchase securities during the 2 to 3 day window before the firms discovered the bank accounts did not have the money he said they did.

16. Over the course of the scheme, Ponn opened approximately 600 brokerage accounts at 17 broker firms. Ponn established the vast majority of these accounts in his own name or in the name of members of his family.

17. Ponn purported to make over $8.7 million in bank account transfers to these brokerage accounts. All of these money transfers were from bank accounts that were underfunded or fake.

18. Although Ponn started the scheme to defraud in early 2007, the frequency and scale of his fraudulent activities took off in 2014. Of the $8.7 million in bogus bank transfers, Ponn made $7.4 million in 2014 and $1.2 million in 2015.

19. During the course of the entire scheme, Ponn knew that the $8.7 million in purported bank account transfers were from accounts that were underfunded or fake.

20. Some of the brokerages receiving Ponn's account opening and fund transfer documents did not credit some or all of Ponn's purported funds transfer before first verifying existence of the bank account and the sufficiency of funds within the account. Many firms, however, did.

21. Of the $8.7 million in bogus bank transfers, brokerages credited Ponn's brokerage accounts in the approximate amount of $6.3 million.

22. Of the $6.3 million credited to Ponn's brokerage accounts, Ponn used approximately $2.9 million to purchase securities. He used $1.12 million to purchase shares in mutual funds or exchange traded funds. He used the remaining $1.74 million to acquire equity securities of over 75 different issuers.

23. Once the broker firms discovered that Ponn's initial deposit was fraudulent, they locked the associated brokerage account and sold the securities held within the account, resulting in a realized gain or loss in the account.

24. As a result of Ponn's fraudulently funded securities purchases, the broker firms suffered net losses of approximately $26,000.

25. In addition to purchasing securities in these brokerage accounts, Ponn also attempted to withdraw or to transfer the fraudulently obtained money and securities. Over the course of the scheme, Ponn attempted to withdraw at least $271,000. These withdrawal attempts were largely unsuccessful. Ponn was able to withdraw only $300. During the course of the scheme, Ponn also attempted to transfer securities from one brokerage to another. All of these transfers were, however, rejected by the transferor firms.

**CLAIM FOR RELIEF**
**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5)**

26. The Commission repeats and incorporates by reference the allegations in

paragraphs 1–25 of the Complaint as if set forth fully herein.

27. As alleged herein, Defendant Ponn directly or indirectly, singly or in concert, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, intentionally, knowingly or recklessly: (a) employed and is employing devices, schemes or artifices to defraud; (b) made and is making untrue statements of material fact or omitted and are omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged and is engaging in acts, practices or courses of business which operate as a fraud or deceit upon other persons.

28. By reason of the foregoing, Defendant Ponn has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A. Enter a permanent injunction restraining Defendant Ponn, as well as his agents, servants, employees, attorneys, and other persons in active concert or participation with him, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5];

B. Enter a permanent injunction restraining Defendant Ponn, as well as his agents, servants, employees, attorneys, and other persons in active concert or participation with him, from opening an account with any brokerage firm without first providing the broker a copy of the complaint filed in this case as well as a copy of the final judgment entered;

      C.      Require Defendant Ponn to disgorge his ill-gotten gains, plus prejudgment interest;

      D.      Order Defendant Ponn to pay an appropriate civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

      E.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

      F.      Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Richard Harper*

Richard Harper (Mass. Bar No. 634782)
   Senior Trial Counsel
Lawrence W. Pisto (Mass. Bar No. 555317)
   Enforcement Counsel
Robert Baker (Mass. Bar No. 654023)
   Assistant Regional Director
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street
Boston, MA 02110
(617) 573-8979 (Harper direct)
(617) 573-4590 (fax)
harperr@sec.gov (Harper email)

Dated: March 31, 2016